**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
Executive Director
and Attorney-in-Chief

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

April 24, 2020

**BY ECF**

Honorable Charles S. Haight
United States District Judge
Southern District of New York

    Re:   *United States v. Jaime Rodriguez,*
           94 Cr. 313 (CSH)

Dear Judge Haight,

    I write on behalf of Jaime Rodriguez. On April 15, 2020, this Court granted Mr. Rodriguez's motion under 28 U.S.C. § 2255 to vacate his 18 U.S.C. § 924(c) conviction and sentence, and directed the parties to file written submissions regarding next steps. In light of the Court's decision, we respectfully request that the Court conduct a prompt resentencing and, for the reasons described below, resentence Mr. Rodriguez to time served. We request that the Court conduct this proceeding by phone and that Mr. Rodriguez be allowed to participate by phone from prison. Counsel and Mr. Rodriguez are available at the earliest date convenient for the Court.[1]

    Jaime Rodriguez is now 50 years old and has served more than 26 years in prison. During the almost three decades that Mr. Rodriguez has been in custody, he has convincingly demonstrated his complete rehabilitation and shown that he is unlikely to ever again commit crimes. While in prison, he earned his GED, worked steadily, undertook hundreds of hours of training and educational programs, and has not had a disciplinary infraction since 1994. He has also maintained a strong relationship with his family and his wife, who are looking forward to welcoming him home. Mr. Rodriguez's crimes were grave. But by today, he has completely transformed himself. He does not need to be in prison. In light of his outstanding post-sentencing conduct and rehabilitation, the fact that the

---

[1] In light of the ongoing Covid-19 pandemic, it is our understanding that the Bureau of Prisons has suspended most inmate movement, so it is unlikely that Mr. Rodriguez could be brought for an in-person court appearance for some time. In addition, for the safety of all parties during the ongoing pandemic, counsel requests that the proceeding take place by phone. For all of these reasons, we submit that it would be in the interests of justice to conduct any resentencing proceeding by phone. I have specifically discussed this issue with Mr. Rodriguez and he consents to a telephonic proceeding.

Court vacated his mandatory five-year consecutive sentence, the fact that he has only around three years left to serve on his original sentence, and the other 18 U.S.C. § 3553(a) sentencing factors, we respectfully urge the Court to resentence Mr. Rodriguez to time served.

## Background

The Court has been with Mr. Rodriguez's case for longer than any of the current lawyers and knows it exceedingly well. But to review the facts briefly: Mr. Rodriguez was one of numerous defendants charged with multiple offenses for his membership and participation in a racketeering enterprise called "C&C." He was initially arrested and detained in July 1993 in a case before Judge Keenan, *United States v. Hernandez, et al.*, S2 93 Cr. 549 (JFK). In 1994, he was charged in the case before this Court. Mr. Rodriguez and his co-defendant Steven Camacho proceeded to trial. In June 1996, they were convicted of five counts: conspiracy to commit murder, two counts of murder, attempted murder, and using and carrying a firearm in furtherance of these offenses.

Mr. Rodriguez was originally sentenced in April 2000, when the federal Sentencing Guidelines were mandatory. As required by these mandatory Guidelines, the Court sentenced him principally to life in prison on the two most serious counts. *See* No. 94 Cr. 313, ECF Dkt. No. 556.

In 2006, following Mr. Rodriguez's direct appeal of his convictions, the Second Circuit remanded to this Court for reconsideration of his sentence under the now advisory Guidelines regime. ECF Dkt. No. 695. This resentencing took place on June 11, 2009. ECF Dkt. No. 754. By the time of his so-called *Crosby* resentencing, Mr. Rodriguez had been in custody for approximately 16 years.

In her 2009 sentencing letter to the Court, *see* ECF Dkt. No. 742, Mr. Rodriguez's lawyer discussed his family background and the powerful positive role he played in the lives of his mother and siblings before his arrest. She ably detailed how Jose Antonio Hernandez, Mr. Rodriguez's "stepfather" (the father of one of his siblings), first drew a young Mr. Rodriguez into criminal activity: Mr. Hernandez used Mr. Rodriguez and some of his friends to sell drugs. *Id.* at 7. This ultimately led to Mr. Rodriguez becoming involved with the C&C organization. His involvement with this organization was the impetus to these crimes. *Id.* With respect to these crimes, Mr. Rodriguez's lawyer noted that he was not charged as the shooter, but instead had been waiting in the getaway car.

Even by 2009, Mr. Rodriguez had taken significant steps to reform himself and change his life. While in prison, he maintained loving and strong relationships with his partner, children, and siblings. *Id.* at 8. His mother, sisters, brothers, children, partner, and others wrote detailed letters to the Court to describe the critical role he played in supporting his family, even after he was incarcerated.

Mr. Rodriguez also made the most of his life on the inside, improving his education and acquiring skills. He earned his GED, participated in educational classes, and worked. As detailed in the 2009 letter,

> Rodriguez entered the Bureau of Prisons system with minimal work skills. Not only did he rapidly acquire skills, but his counselors, even then, emphasized how he became responsible for training other inmates, the special attention he paid to safety procedures both for himself and others, his ability to work with minimal supervision, his ability to see a project through to completion and, significantly, the positive attitude and manner he brought to his work.

*Id.* at 10. After observing him for eight years, his work supervisor at USP Lewisburg did not have a negative thing to say about him, characterized him as an "outstanding worker," and noted the remarkable way that he had stayed out of trouble during his entire time at the institution. *Id.* at 10-11.

After considering the mitigation evidence submitted on behalf of Mr. Rodriguez and the other circumstances of the case (including the sentences imposed on co-defendants), in 2009 this Court exercised its discretion to sentence Mr. Rodriguez below his advisory Guidelines range. With respect to Counts Two and Three, the most serious counts, the Court imposed a sentence of 25 years. *See* ECF Dkt. No. 754; *see also* Sentencing Transcript of June 11, 2009. The Court imposed a sentence of ten years on Counts One and Four. These were all ordered to run concurrently with one another and with the sentence imposed in *United States v. Hernandez*, S2 93 Cr. 549 (JFK). Finally, as mandated by statute, on Count Five (the violation of 18 U.S.C. § 924(c)), the Court imposed a consecutive five-year prison term.

During the last ten years, Mr. Rodriguez has continued on his unwavering path of rehabilitation and self-improvement. He has not had any disciplinary infractions since 1994. He has pursued his education and worked in prison. As his most recent presentence report reflects, he has taken several courses to acquire plumbing and computing skills. He also most recently worked in the prison carpentry shop.

Despite their physical separation, Mr. Rodriguez has also maintained a close relationship with his family and remained an integral part of their lives. He is still with his long-term partner, Yaritza, and the couple married in 2019. He remains deeply connected to her and their children. Yaritza's daughter from a previous relationship, Stephanie Sanchez-Mantilla, has written to the Court on Mr. Rodriguez's behalf (letter attached as *Exhibit A*). She describes the advice and emotional support that Mr. Rodriguez has given her over the years. As she writes, "I didn't need him to physically be present at home for me to call him my dad. I just needed the support and advice that he gave me."

Mr. Rodriguez also remains close with his extended family, including his six siblings, his parents, aunts and uncles. Speaking recently about Mr. Rodriguez, Yaritza described him as the glue that has held his family together. He helped her be a better mother. And he helped guide his siblings on a better path than he himself chose: one of his brothers is now a police sergeant, another is an army captain. One of his sisters is a teacher. They all attribute their success in part to the advice, guidance, and support that Mr. Rodriguez has given them. He has an extensive support system in the community and many family members who are anxious to welcome him home and support him in any way that they can when he is released from prison.

## Discussion

The Court has now vacated Mr. Rodriguez's § 924(c) sentence and conviction. This count carried a mandatory consecutive five-year sentence.[2] With respect to the other counts, the Court sentenced Mr. Rodriguez principally to 25 years. He has already served more than that time. Considering all of the 18 U.S.C. § 3553(a) sentencing factors, the Court should resentence Mr. Rodriguez to time served.

In its April 23, 2020 letter to the Court, the government focuses on one § 3553(a) factor, the nature and circumstances of Mr. Rodriguez's offenses, to the exclusion of all others. The Court must consider the seriousness of Mr. Rodriguez's crimes at resentencing. But that is not the only thing it must consider—this Court is sentencing a human being. Human beings are always more than the worst thing that they have done. Mr. Rodriguez's record over the last three decades shows that.

In *Pepper v. United States*, 562 U.S. 476 (2011), the Supreme Court discussed the importance of considering evidence of postsentencing rehabilitation at a defendant's resentencing. As the Court explained, "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors …. For example, evidence of postsentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.' [] Such evidence may also be pertinent to 'the need for the sentence imposed' … to 'afford adequate deterrence to criminal conduct,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with needed educational or vocational training ….'" 562 U.S. at 491. "In assessing ... deterrence, protection of the public and rehabilitation, … there would seem to be no better evidence than a defendant's post-incarceration conduct." *Id.* (quoting *United States v. McMannus*, 496 F.3d 846 (8th Cir. 2007) (Melloy, J., concurring)). Postsentencing rehabilitation may also "critically inform

---

[2] According to the updated presentence report provided by the Probation Department, the advisory Sentencing Guidelines range has not changed.

a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary.'" *Pepper*, 562 U.S. at 491.

Following this Supreme Court guidance, this Court should give great weight to how Mr. Rodriguez has conducted himself over the past 26 years. The troubled young person who was convicted all of those years ago is virtually unrecognizable to Mr. Rodriguez now. He cannot undo the mistakes and choices that he made when he was 22. But he has devoted his life in prison to improving himself so that he can lead a better life and make better choices whenever he is once again free. He has matured, worked, educated himself, and gained valuable skills. His prison record reflects a careful and conscientious person who is ready to rejoin society.

Moreover, since 2009, the Court has learned two additional important pieces of information relevant to sentencing, which militate in favor of the modest sentence reduction requested here. First, to the extent that the Court intended for Mr. Rodriguez to serve additional time for these offenses above and beyond what he served for his other federal case, that has already happened. He was sentenced to 25 years on his case before Judge Keenan, with that sentence beginning when he was arrested and detained in 1993. With "good time" credit, that sentence should have totaled just over 21 years and been completed in 2014 or 2015. It is now 2020 and Mr. Rodriguez has served over 26 years. In other words, he has already served approximately five years above and beyond the sentence imposed by Judge Keenan, because the Bureau of Prisons did permit his two federal sentences to run fully concurrently. As a result, he has already served approximately five years of additional time exclusively for this case. Most importantly, he has served what is, overall, a significantly punitive and meaningful prison term. *Cf. Dean v. United States*, 137 S. Ct. 1170, 1176 (2017) (explaining that the § 3553(a) factors should be considered to set both prison terms on individual counts and a defendant's overall aggregate sentence).

Second, it is preternaturally clear that Mr. Rodriguez is a changed human being. He has continued to demonstrate his total rehabilitation through his conduct in custody, his relationship with his family, and his educational and work efforts: he has worked steadily and productively while in custody, he has earned his GED and acquired other practical skills, he has undertaken hundreds of hours of educational programming, and he has maintained a clear record with no disciplinary infractions for *25 years*. This is a remarkable record of postsentencing rehabilitation. It is difficult to imagine how a person could better demonstrate that he no longer needs to be in prison.

When Mr. Rodriguez is released, he will reside with his wife Yaritza in New Jersey. The two have remained close throughout Mr. Rodriguez's incarceration. Yaritza works full time for Amazon and will be able to support Mr. Rodriguez during his transition to the community. He will also have the support of other

family members, including numerous siblings, aunts and uncles, and his adult children. They will do everything that they can to ensure that he remains on his current path and that he becomes a productive and positive member of his community. Based on his record over the last 25 years, there is every reason to think that he will. As Yaritza recently commented, he has touched so many lives while in prison, she can only imagine the good he will do when he is released.

## Conclusion

No statutory purpose would be served by further incarceration for Mr. Rodriguez. A sentence of time served would be a modest sentence reduction and Mr. Rodriguez will still have served a substantial prison term that fully reflects the seriousness of his offenses, provides general deterrence, and exacts punishment. But a modest sentence reduction would also reflect Mr. Rodriguez's extraordinary postsentence rehabilitation and the reality of the person that he is today. For these reasons, we respectfully urge the Court to conduct a prompt resentencing and to sentence Mr. Rodriguez to time served.

Respectfully submitted,

Sarah Baumgartel, Esq.
Assistant Federal Defender
Federal Defenders of New York, Inc.
52 Duane Street, 10th Fl.
New York, NY 10007
T: (212) 417-8772
Sarah_Baumgartel@fd.org

cc: Katherine C. Reilly, Esq. (by ECF)